UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., <br><br>         Plaintiff, <br><br>v. <br><br>UNITED STATES, <br><br>         Defendant | | Court No. 18-00222 |

## COMPLAINT

  Plaintiff Aspects Furniture International, Inc. (hereinafter, "Plaintiff" and/or "AFI" / "Aspects"), by and through its attorneys, alleges and states as follows against the Defendant United States of America (hereinafter, "U.S.A.") for actions taken by U.S. Customs and Border Protection (hereinafter, "CBP" and/or "Customs Service" / "Customs") (collectively "Defendant"):

## JURISDICTION

1.  Plaintiff AFI brings this action against Defendant U.S.A. to contest CBP's denial of the protests listed on the Summons in this action (hereinafter, the "Protests"), under Section 515 of the Tariff Act of 1930 ("Tariff Act"), as amended, codified at 19 U.S.C. § 1515. Specifically, Plaintiff AFI contests the untimely liquidation of the entries subject to the Protests (hereinafter, "Subject Entries" and/or "Entries"), under Section 504 of the Tariff Act of 1930 ("Tariff Act"), as

amended, codified at 19 U.S.C. § 1504. Thus, the United States Court of International Trade (hereinafter, "USCIT" and/or the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a).

## PARTIES

2. Plaintiff AFI is a corporation headquartered in Chino Hills, California, and is the importer of record of the subject merchandise at issue.

3. Defendant U.S.A., as represented by the Attorney-in-Charge for the U.S. Department of Justice, International Trade Field Office, Commercial Litigation Branch, is headquartered at 26 Federal Plaza, Room 346, New York, New York 10278.

## STANDING

4. Plaintiff AFI is the importer of record and paid anti-dumping duties in connection with the import of the subject merchandise into the United States. Further, Plaintiff filed the Protests pursuant to Section 514 of the Tariff Act, codified at 19 U.S.C. § 1514, which CBP denied pursuant to Section 515 of the Tariff Act, codified at 19 U.S.C. § 1515 and which are covered by this action. Plaintiff therefore has standing to bring this action against Defendant U.S.A., for actions taken by CBP, pursuant to 28 U.S.C. § 2631(a).

5. In addition, Plaintiff has paid all duties, charges, and extractions prior to filing the Summons in this action, as provided for under 28 U.S.C. § 2637(a).

**TIMELINESS**

6.      Plaintiff AFI timely protested all Subject Entries with CBP and timely contests all protest denials to this Court. Specifically, CBP issued the protest denials that are the subject of this action on May 10, 2018. Plaintiff commenced this action within 180 days after the date of denial with the concurrent filing of a Summons and Complaint on October 27, 2018. Therefore, the action against Defendant and CBP is timely filed under 28 U.S.C. § 2636(a)(1).

**STATEMENT OF FACTS**

7.      The imported merchandise at issue is wooden bedroom furniture (hereinafter, "WBF") from the People's Republic of China (hereinafter, "PRC" and/or "China").

8.      On *March 2, 2015*, the U.S. Department of Commerce (hereinafter, "Commerce") initiated the instant tenth (10th) administrative review of WBF from China. *Initiation of Antidumping and Countervailing Duty Administrative Reviews, 80 Fed. Reg. 11,166, 11,168-70 (Dep't Commerce, March 2, 2015)*; see also Notice of Amended Final Determination of Sales at Less than Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture from the People's Republic of China, 70 Fed. Reg. 329, 329 (Dep't Commerce Jan. 4, 2005).

9.      Commerce selected Shanghai Jian Pu Import & Export Co., Ltd. (hereinafter, "Jian Pu") as the sole mandatory respondent because it was <u>the only respondent</u> for which a request for review had not been withdrawn, and it also had provided the information required by Commerce to be considered for status separate from the PRC-wide entity. *Wooden Bedroom Furniture from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative*

*Review, 80 Fed. Reg, 77321, 77321 (Dep't Commerce Dec. 14, 2015)* (hereinafter, "Preliminary Results"); *see also* <u>Wooden Bedroom Furniture from the People's Republic of China: Partial Rescission of Antidumping Duty Administrative Review</u>, *80 Fed. Reg., 65198 (Dep't Commerce Oct. 26, 2015)*.

10. On *December 14, 2015*, Commerce published its preliminary results in the Federal Register, in which it determined that Jian Pu was part of the PRC-wide entity, and thus applied the PRC-wide rate of 216.01% to Jian Pu's exports. Preliminary Results, 77322.

11. Further, on *April 11, 2016*, Commerce <u>published its final results</u> in the Federal Register, which left its Preliminary Results unchanged. *Wooden Bedroom Furniture from the People's Republic of China; Final Results and Final Determination of No Administrative Review, in Part: 2014 Administrative review, 81 Fed. Reg. 21,319, 21,319 (Dep't Commerce Apr. 11, 2016)* (hereinafter, "Final Results"). Specifically, the Final Results confirmed Commerce's preliminary duty rate applied to Jian Pu's exports of 216.01%. and lifted the statutory suspension of liquidation of the Subject Entries. *Id.* As a result, after the April 11, 2016 notice of removal of suspension, CBP started liquidating the Subject Entries of Jian Pu goods at the rate of 216.01%.

12. On *April 26, 2016*, the American Furniture Manufacturers Committee for Legal Trade and Vaughan-Bassett Furniture Company, Inc. (collectively, "AFMC") filed a lawsuit against USCIT. Concurrently, AFMC also filed a motion for preliminary injunction with USCIT, seeking to enjoin the liquidation of any unliquidated entries of subject WBF from China, imported by Jian Pu during the period January 1, 2014 through December 31, 2014.

13. On *April 27, 2016*, USCIT granted AFMC's request for preliminary injunction, and enjoined liquidation of the aforementioned Subject Entries.

14. On *May 2, 2016*, CBP (<u>not</u> Commerce) published a message in Customs' AD/CVD Search Portal (hereinafter, "ACE Services") informing CBP port officials of the preliminary injunction, and of the suspension of liquidation of the Subject Entries. *Message No. 6123302 (May 2, 2016)* (hereinafter, "April 2016 Message").

15. The hearing for AMFC's lawsuit against Commerce was held before the USCIT on *February 28, 2017. Transcript of Oral Argument, AFMC v. United States, No. 16-00070 (U.S. Ct. Int'l Trade R. 81 Feb. 28, 2017)* (hereinafter, "February 2017 Transcript").

16. On *March 13, 2017,* the Court issued its final judgment, dismissing AFMC's lawsuit for lack of subject matter jurisdiction. *AFMC v. United States, 39 I.T.R.D. 1025(BNA), No. 16-00070 (Ct. Int'l Trade Mar. 13, 2017)* (hereinafter, "March 13 Judgment").

17. On *March 29, 2017*, CBP <u>published</u> the aforementioned USCIT judgment in its Customs Bulletin and Decisions Official Reporter. *U.S. Court of International Trade Slip Opinions, Vol. 51, No. 13 (Cust. B. & Dec. Mar. 29, 2017)*.

18. Finally, on *May 30, 2017*, CBP (<u>not</u> Commerce) published another message in ACE Services, this time informing CBP port officials that the suspension of liquidation of the Subject Entries had been lifted. *Message No. 7150306 (May 30, 2017)* (hereinafter, "May 2017 Message").

19. Subsequently, on *November 24, 2017*, CBP liquidated Entry Nos.: W69-3325900-5, W69-3325953-4, W69-3326026-8, W69-3329300-4, W69-3329302-0, W69-3329955-5, W69-3343109-1, W69-3345392-1, and W69-3368746-0.

20. Moreover, on *December 1, 2017*, CBP also liquidated Entry No.: W69-3327386-5.

21. Plaintiff AFI timely protested such liquidations. Specifically, on *April 6, 2018*, AFI filed Protest No.: 5201-18-100098 in connection with Entry Nos.: W69-3325900-5, W69-3325953-4, W69-3326026-8, W69-3329300-4, W69-3329302-0, W69-3329955-5, W69-3343109-1, W69-3345392-1, and W69-3368746-0. AFI argued that the liquidation of the aforementioned entries was untimely under 19 U.S.C. 1504(d), since the asserted liquidation date of *November 24, 2017,* occurred more than six (6) months after CBP received notice of the removal of the suspension of liquidation. Nevertheless, the CBP Miami, FL Seaport (Port Code No.: 5201) failed to address such argument and denied Protest No.: 5201-18-100098 on *May 10, 2018*.

22. Similarly, on *April 16, 2018*, AFI filed Protest No.: 5201-18-100100 in connection with Entry No.: W69-3327386-5. Again, AFI argued that the liquidation of the aforementioned entries was untimely under 19 U.S.C. 1504(d), since the asserted liquidation date of *December 1, 2017,* occurred more than six (6) months after CBP received notice of the removal of the suspension of liquidation. Nevertheless, the CBP Miami, FL Seaport (Port Code No.: 5201) failed to address such argument and denied Protest No.: 5201-18-100100 on *May 10, 2018*.

23. AFI now brings this action against Defendant to contest the denial of the protests and the untimely liquidation of the Subject Entries by CBP.

**STATEMENT OF CLAIMS**

24. Paragraphs 1 through 23 are hereby incorporated by reference.

25. CBP wrongfully denied Plaintiff's Protests at the CBP Port of Miami, because the ports violated the mandatory provisions of 19 U.S.C. § 1504(d) when they liquidated the Subject Entries more than six (6) months after CBP received notice of the removal of suspension of liquidation of such Subject Entries.

26. Section 1504(d) of Title 19 of the U.S.C. states, in relevant part, that

> "when a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry . . . within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. Any entry . . . not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity and amount of duty asserted at the time of entry by the importer of record . . ."

19 U.S.C. § 1504(d).

27. Generally, where a statute fixes a time for performance, it is only directory, rather than mandatory, unless there are negative words restraining the doing of the act after the time specified, and a penalty is imposed for the delay. *Diamond Match Co. v. United States, 181 F. Supp. 952, 958-59 (Cust. Ct. 1960).* In the instant case, the applicable statute is 19 U.S.C. § 1504(d) and it contains both negative words restraining liquidation after the time specified and a penalty imposed for the delay. Specifically, 19 U.S.C. § 1504(d) provides that "[a]ny entry . . . *not* (emphasis added) liquidated by the Customs Service within six months after receiving such notice" will automatically be construed as "having been liquidated at the rate of duty, value, quantity and amount of duty asserted at the time of entry by the importer of record;" in other words, under the penalty of being deemed liquidated, all entries subject to court ordered suspension *must* be liquidated by CBP within 6 months from the date when notice of the removal of suspension is given to CBP. Therefore, the provisions of 19 U.S.C. §1504(d) are mandatory

and deemed liquidation will automatically occur after the 6-month period has concluded as to all entries not liquidated before such date.

28. Under 19 U.S.C. § 1504(d), as interpreted by case law, deemed liquidation occurs when Customs fails to liquidate and entry within six (6) months after receiving notice that the suspension of liquidation that was in place was removed. *Fujitsu General America v. United States*, 283 F.3d 1364, 1376 (Fed. Cir. 2002) (hereinafter, "*Fujitsu*").

29. Here, the notice of the removal of suspension of liquidation for WBF imported in 2014 by Plaintiff AFI from manufacturer Jian Pu in China occurred on *April 11, 2016*, in accordance with Commerce's notice in the Federal Register regarding its final results and determination as to such final results. Final Results.

30. In the alternative, as we demonstrate below, each of the following dates can qualify as a date when the Customs Service had notice of the removal of suspension of liquidation within the meaning of 19 U.S.C. § 1504(d): *March 13, 2017* (when the USCIT issued its final judgment in accordance with 29 U.S.C. §1291 and §1585), or *March 29, 2017* (when Customs published the aforementioned decision in the Customs Bulletin).

31. In any event, the latest date when CBP received notice of the removal of suspension of liquidation of the Subject Entries is *May 12, 2017* (when the USCIT's March 13, 2017 decision became final and conclusive within the meaning of 19 U.S.C. § 1516a(e)).

32. Accordingly, while the controlling statutory provision does not provide any requirements for what constitutes such notice, the courts have interpreted that in order to trigger the 6-month mandatory liquidation period, the notice must be both public and unambiguous. *Fujitsu* at 1381-1382*; Int'l Trading Co. v. United States, 281 F.3d 1268, 1272 (Fed. Cir. 2002)* (hereinafter,

"*International Trading*") (stating that the date of publication [of the final results] provides an unambiguous and public starting point for the six-month liquidation period, and it does not give the government the ability to postpone indefinitely the removal of suspension of liquidation (and thus the date by which liquidation must be completed) as would be the case if the six-month liquidation period did not begin to run until Commerce sent a message to Customs advising of the removal of suspension of liquidation); *Cemex S.A. v. United States, 279 F.Supp.2d 1357, 1361 (Ct. Int'l Trade 2003)* (hereinafter, "*Cemex*"); *FYH Bearing Units USA, Inc. v. United States, 753 F. Supp. 2d 1348 (Ct. Int'l Trade 2011)* (hereinafter, "*FYH Bearing*") (stating that assuming arguendo that the Federal Circuit had not made the public nature of the notice a requirement, the court would do so here).

33.     For notice to be sufficient under § 1504(d), CBP must receive "**unambiguous** (emphasis added) [notice] that the suspension of liquidation has been lifted, but [the notice] does not need to include specific liquidation instructions from Commerce to Customs." *Fujitsu* at 1364. *See also International Trading* at 1276 (finding that publication of the final results of the administrative review in the Federal Register provided the requisite notice to Customs despite the fact that it did not include specific liquidation instructions). Similarly, while the United States Court of Appeals for the Federal Circuit (hereinafter, "Federal Circuit") has held that "notice of the duty rate provides sufficient notice to Customs that the suspension had been lifted," and that "Customs cannot liquidate the entries without receiving the proper antidumping duty rate," the same court has explained that "neither the statute nor our precedent requires that the duty rate be included in the notice in order to satisfy the requirements of 19 U.S.C. § 1504(d)." *NEC Solutions (America) Inc. v. United States, 411 F.3d 1340, 1345-1346 (Fed. Cir. 2005)*

(hereinafter, "*NEC Solutions*"); *International Trading* at 1276 (finding that "'notice of the duty to be paid is, in effect, notice of the removal of suspension").

34.     Furthermore, in *Fujitsu*, the plaintiff argued that because the clerk of the Federal Circuit served the counsel for the government—the Department of Justice—with the court's decision, such action constituted notice to Customs for purposes of 19 U.S.C. §1504(d). *Fujitsu* at 1379. The court rejected plaintiff's argument, reasoning that the Department of Justice (hereinafter, "DOJ") represents Commerce, and not Customs before the court. *Id.* Similarly, in NEC Solutions, the court reasoned that service of an opinion on DoJ was not service on CBP **because** "the Justice Department represented Commerce." *Id. See also NEC Solutions* at 1346. Moreover, in *NEC Solutions,* the court held that "service of an opinion to attorneys at Justice does not constitute **constructive** (emphasis added) notice to Customs". *Id.*

35.     Plaintiff AFI is neither contesting such finding, nor making a different contention. Instead, Plaintiff AFI argues that *Fujitsu* and *NEC Solutions* are not applicable in AFI's case. Specifically, in *Fujitsu* and *NEC Solutions*, the plaintiffs merely alleged that because CBP is an agency of the United States and because DOJ represents the United States, Customs should have constructive notice when DOJ is served with the court's opinion. *Fujitsu* at 1379; *NEC Solutions* at 1346. However, in the instant case, Customs had **actual notice** of the court's February 28, 2017 ruling and its subsequent March 13, 2017 Judgment, rather than merely constructive notice.

36.     Here, Customs' actual notice derives from the fact that Customs was present at the February 28, 2017 hearing through Mr. Ed Maurer (or Mahrer), a CBP attorney. *February 2017 Transcript at 2 and 3 ¶¶ 13-17.* Not only did Mr. Maurer represent Customs at the February hearing, but he was an active part of the defense, since he sat at the counsel table together with

the attorneys for DOJ and Commerce. *Id.* In other words, the Federal Circuit seems to accept the possibility of Customs receiving notice within the meaning of 19 U.S.C. §1504(d) by being served with the court's opinion, so long as CBP had actual notice, rather than constructive. *Fujitsu at 1379; NEC Solutions at 1346.* Since Customs was directly represented by one of its attorneys at the February 28, 2017 hearing preceding the court's March 13, 2017 Judgment, Customs was personally served with the court's aforementioned judgment, which lifted the suspension of liquidation of the Subject Entries.

37. Under 19 U.S.C. § 1504(d), Customs must receive notice that a suspension of liquidation has been removed from either "the Department of Commerce, other agency, or a court with jurisdiction over the entry." 19 U.S.C. § 1504(d). The language used by Congress in § 1504(d) is not accidental, but rather deliberate so as to allow the Customs Service to receive notice not only from Commerce, but from any other entity or court with jurisdiction over the entries at issue. *Id.* Here, CBP received notice of removal of suspension of liquidation from USCIT, which is certainly a court with jurisdiction over the Subject Entries, on *March 13, 2017*, when the court issued its final decision in the matter in which CBP was personally present as a defendant through its attorneys.

38. Furthermore, the court in *Fujitsu* also rejected plaintiff's argument that Customs had notice because the court's decision in *Fujitsu* was available in a variety of commercially available print and electronic media, reasoning that there was "no evidence that *in fact* (emphasis added) Customs received general media notice of the Fujitsu General Decision." *Fujitsu* at 1380. However, once again in the instant case such evidence does exist: in addition to CBP's attorney being present at the February 28, 2017 hearing at counsel table, Customs also published the decision in the Customs Bulletin on *March 29, 2017*. It follows that if CBP did not "in fact"

receive notice of the court's March 13, 2017 Judgment, CBP would not have been able to publish it in its Bulletin.

39.     Moreover, "the issue of whether the publication of a court decision constitutes notice turns on indications of whether Customs actually received notice." *Peer Chain Co. v. United States, 316 F.Supp.2d 1357, 1363* (hereinafter, "*Peer Chain*"). *See also Fujitsu* at 1379 (stating that section 1504(d) requires that Customs receive notice that a suspension of liquidation has been removed from the Department of Commerce, other agency, or a court with jurisdiction over the entry (internal quotations omitted)). The 'key' word here is "actual"—and in the instant case, there is overwhelming evidence of such actuality: CBP's attorney was present at the February 28, 2019 hearing where the USCIT dismissed AFMC's lawsuit and dissolved the preliminary injunction imposed in the matter; CBP's attorney was an active part of the defense, sitting at the counsel table alongside with attorneys from DOJ and Commerce; CBP's attorney took actual notice of the court's ruling, and the fact that the court called the lawsuit that warranted the injunction "frivolous;" CBP's attorney took actual notice of the court's judgment in which the court stated that "[e]ssentially, the results [of Final Results] have not been appealed." March 13, 2017 Judgment at 4.

40.     Moreover, in *Peer Chain*, the court reiterated that essential for establishing notice is actuality under the facts, stating that "[u]pon the *facts at hand* (emphasis added), nowhere has it been indicated or alleged that Customs actually received such notice prior to the May 22, 2017 e-mail message." Here, however, Customs received not one (1), but at least two (2) such notices prior to the May 2017 Message: *March 13, 2017* (when the USCIT issued its final judgment reached at the February 28, 2017 hearing), and *March 29, 2017* (when Customs published the aforementioned decision in Customs Bulletin). Therefore, CBP received notice of removal of

suspension of liquidation of the Subject Entries within the meaning of 19 U.S.C. § 1504(d) on March 29, 2017, when CBP published the judgment issued by USCIT on *March 29, 2017,* dissolving the preliminary injunction which suspended the aforementioned liquidation in the first place.

41.     In any event, Customs received notice of the removal of suspension of liquidation no later than *May 12, 2017*, when the March 13, 2017 Judgment became final and conclusive within the meaning of 19 U.S.C. § 1516a(e). *Fujitsu* at 1379. *See also NEC Solutions* at 1342. As mentioned above, after the April 11, 2016 removal of suspension, an injunction of the liquidation of the aforementioned Subject Entries was imposed due to USCIT Case No. 16-00070. April 2016 Message. According to the court in *Fujitsu*, a suspension ordered by the USCIT is removed when the court's decision in the matter can no longer be appealed. *Fujitsu* at 1379. In the instant case, the court issued its decision on March 13, 2017, and such decision was subject to appeal for 60 days after such date. 28 U.S.C. 1295(a)(5), 2645(c) and 2107(b). Because no appeal was filed, the court's decision became final and conclusive within the meaning of 19 U.S.C. § 1516a(e) no later than May 12, 2017. Consequently, the court ordered suspension was lifted on May 12, 2017, at the latest.

42.     In *Fujitsu,* one last argument for which the court did not sustain plaintiff's argument was "[b]ecause no earlier date qualifies." *Fujitsu* at 1380. Here, more than one of the dates prior to the May 30, 2017 notice date alleged by Customs can apply. First, CBP had unambiguous notice on *February 28, 2017*, since a CBP attorney was present at the counsel table, as defendant. Such unambiguous notice became public on *March 13, 2017*, when the court published its decision. Alternatively, the notice became public for purposes of section 1504(d) on March 29, 2017, when CBP <u>itself</u> actually published USCIT's judgment in the Customs Bulletin. In any event, the

very last plausible date for when the unambiguous notice to CBP became public was *May 12, 2017*. May 30, 2017 has no justification to constitute notice, because the May 30, 2017 message does not come from Commerce; instead, it comes from CBP and it is directed to the CBP.

43.     Therefore, all of Plaintiff AFI's Subject Entries should have been liquidated by CBP <u>no later than</u> *November 12, 2017*, which is six (6) months after CBP received notice of removal of suspension of liquidation of such entries. Instead, CBP untimely liquidated the entries subject to Protest No.: 5201-18-100098 (Entry Nos.: W69-3325900-5, W69-3325953-4, W69-3326026-8, W69-3329300-4, W69-3329302-0, W69-3329955-5, W69-3343109-1, W69-3345392-1, and W69-3368746-0) on *November 24, 2017*, which occurred 12 days after the entries were deemed liquidated under 19 U.S.C. § 1504(d). Moreover, CBP untimely liquidated the entry subject to Protest No.: 5201-18-100100 (Entry No.: W69-3327386-5) on *December 1, 2017*, 19 days after the entry was deemed liquidated under 19 U.S.C. § 1504(d). In fact, Entry No.: W69-3327386-5 was untimely liquidated even under CBP's contention that notice of removal of suspension of liquidation of the Subject Entries, which includes Entry No.: W69-3327386-5, occurred on *May 30, 2017*, when CBP published an internal message informing its port directors of the removal of suspension and providing liquidation instructions. May 2017 Message.

## **PRAYER FOR RELIEF**

44.     WHEREFORE, Plaintiff respectfully requests that this Court:

   a) Issue a judgment in Plaintiff's favor; and

b) Hold that Protest No.: 5201-18-100098 and Protest No.: 5201-18-100100 were erroneously denied by CBP;

c) Hold that all of the Subject Entries were already liquidated by operation of law as of November 12, 2017, at the latest, in accordance with 19 U.S.C. § 1504(d);

d) Order that the liquidation bills issued by the Customs Service with respect to the subject entries be withdrawn, and that all payments of anti-dumping duties made by Plaintiff AFI pursuant to such bills be refunded, together with interest from the date of payment to Customs through the date of refund; and

e) Grant Plaintiff such other and further relief as this Court deems just and proper.

Respectfully Submitted,

_____

Robert W. Snyder
LAW OFFICES OF ROBERT W. SNYDER
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail: rsnyder@rwsnyderlaw.com

Dated: October 27, 2018
Irvine, CA

*Counsel for Plaintiff Aspects Furniture International, Inc.*