<u>**UNITED STATES COURT OF INTERNATIONAL TRADE**</u>

| |
|---|
| ASPECTS FURNITURE INTERNATIONAL, INC.,<br><br>              Plaintiff,<br><br>   v.<br><br>UNITED STATES,<br><br>              Defendant. |

Before: Hon. Mark A. Barnett, Judge

**Court No.** 18-00222

<u>**ORDER**</u>

Upon consideration of Plaintiff's Motion for Leave to File a First Amended Complaint

and the responses thereto; and upon reading other papers and proceedings had herein; it is hereby

**ORDERED** that Plaintiff's Motion for Leave to File a First Amended Complaint Is

GRANTED; and

**ORDERED** that Plaintiff's First Amended Complaint is deemed filed.

_____

                           Mark A. Barnett, Judge

Dated: _____
      New York, New York

## UNITED STATES COURT OF INTERNATIONAL TRADE

ASPECTS FURNITURE INTERNATIONAL, INC.,

               Plaintiff,

    v.

UNITED STATES,

               Defendant.

Before: Hon. Mark A. Barnett, Judge

**Court No.** 18-00222

## MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Pursuant to Rule 15(a) of the Rules of the U.S. Court of International Trade (hereinafter, "USCIT"), plaintiff, Aspects Furniture International, Inc. (hereinafter, "Plaintiff" and/or "Aspects"/"AFI"), respectfully moves to amend its complaint (hereinafter, "Motion to Amend") against defendant United States (hereinafter, "Defendant" and/or the "Government"); wherein Plaintiff challenged U.S. Customs and Border Protection's (hereinafter, "CBP" and/or "Customs") denial of the protests listed on the Summons in this action (hereinafter, the "Protests"), under Section 515 of the Tariff Act of 1930 ("Tariff Act"), as amended, codified at 19 U.S.C. § 1515.

Specifically, Plaintiff AFI contests the untimely liquidation of the entries subject to the Protests (hereinafter, "Subject Entries" and/or "Entries"), under Section 504 of the Tariff Act of 1930 ("Tariff Act"), as amended, codified at 19 U.S.C. § 1504. A proposed First Amended Complaint is attached to this motion as **EXHIBIT 1**.

Plaintiff moves the Court to permit amendment of its complaint in the interests of justice, as contemplated under Rule 15(a)(2).  Pursuant to USCIT Rule 15(a)(2), the "court should freely give leave" to amend a pleading "when justice so requires."  Further, "[a]llowing or denying a motion to amend the complaint is within the sound discretion of the court*." NTN Bearing Corporation of America, et. al. v. United States*, 2011 WL 4910427, at *1 (CIT Oct. 17, 2011).

Acknowledging that USCIT Rule 15(a)(2) is identical to Rule 15(a)(2) of the Federal Rules of Civil Procedure, the U.S. Court of Appeals for the Federal Circuit (hereinafter, the "Federal Circuit") has adopted the United States Supreme Court's view on the standard set out under Rule 15.  *See, e.g*., *Intrepid v. Pollock*, 907 F.2d 1125, 1128 (Fed. Cir. 1990) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).  Specifically, the Supreme Court has framed the balancing of interests envisioned by Rule 15 as follows:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given."

*Foman* 371 U.S. at 182.

Moreover, should the Court consider Plaintiff's Motion to Amend in conjunction with the scheduling order issued in this case, Plaintiff demonstrates below that good cause exists for granting Plaintiff's Motion to Amend, as required under USCIT Rule 16(b)(4).  Further, if a motion to amend a scheduling order is filed seeking to extend a deadline that has already passed, it is properly treated as a motion for an extension of time, out of time, and USCIT Rule 6(b)(1)(B) also applies.  *See Rienzi and Son, Inc. v. United States*, Court No. 07-00056, Slip Op. 16-77

**Page 2 of 6**

(quoting *United States v. Horizon Prods. Int'l, Inc.*, 34 F. Supp. 3d 1365, 1367, 2014 Ct. Intl. Trade LEXIS 147, 36 Int'l Trade Rep. (BNA) 1462, (2014)). Such a motion must show "excusable neglect or circumstances beyond the control of the party." USCIT R. 6(b)(1)(B).

When assessing excusable neglect, the Court considers factors such as: "(1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was within the reasonable control of the movant, and (4) whether the movant acted in good faith." *Horizon Prods.,* 38 CIT at __, 34 F. Supp. 3d at 1367 (citing *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 392, 395 (1993)). Furthermore, the Court may also consider "all relevant circumstances surrounding the party's omission." *Home Prods. Int'l, Inc. v. United States*, 31 CIT 1706, 1709, 521 F. Supp. 2d 1382, 1385 (2007) (quoting *Pioneer*, 507 U.S. at 395).

The interests of justice would be best served by granting Plaintiff's Motion to Amend for the foregoing reasons. First, Plaintiff's proposed amendments are brought in good faith, in an attempt to clarify its claims further and bring them in alignment with a recent order issued by this Court in a separate, yet related case currently pending before the Court—IMSS, LLC v. United States, Court No.: 19-00029. *See IMSS*, April 13, 2020 Memorandum. In that respect, the proposed amendments seek to narrow down the remaining issue disputed between the parties in the instant case: whether Customs Message No.: 7150306 provided Customs with the effective notice required under 19 U.S.C. § 1504(d), or whether such notice occurred at an earlier date instead.

Moreover, Plaintiff's proposed amendments will not cause undue delay or prejudice for Defendant. "In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional

**Page 3 of 6**

resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir.1994) (quoting *Tokio Marine & Fire Insurance Co. v. Employers Insurance of Wausau*, 786 F.2d 101, 103 (2d Cir.1986)).

In the instant case, the proposed amendments will not cause the Government to expend any additional resources to conduct discovery, because on December 30. 2019, the Government filed a Motion to Stay Discovery.  The Court granted Defendant's Motion to Stay Discovery on January 14, 2020 and, to date, discovery has not resumed in this case.  While Plaintiff has served Defendant with a Request for Production of Documents and Tangible Things, as well as a set of Requests for Admission, Defendant has not responded to such requests, since its Motion to Stay Discovery was filed on the day when its first discovery responses were due.  Therefore, should Plaintiff's Motion to Amend be granted by the Court, the Government will not be required to expend additional resources or engage in duplicative discovery.

Moreover, the amendments proposed in Plaintiff's attached First Amended Complaint will not affect Defendant's preparation for trial, since Plaintiff's amended claims do not greatly depart from the general allegations in Plaintiff's original complaint—that the entries subject to this action were untimely liquidated by Customs pursuant to 19 U.S.C.  In other words, Defendants' rights and opportunity to respond to the Plaintiff's proposed arguments will not be curtailed in any way by reason of the Proposed First Amended Complaint.

While Plaintiff regrets not having filed the Motion to Amend at an earlier stage, within the timeline prescribed in the scheduling order issued in this case, Plaintiff respectfully asks the

Court to find that any delay in bringing the present motion was not due to any dilatory motives but, instead, it was due to excusable neglect, at best.

Thus far in this matter, the parties have generally consented to motions for multiple extensions of time. In fact, several requests for extension of time filed in the instant case have been due to a 35-day government shut-down, which took place shortly after Plaintiff initiated its action, and, more recently, a world health pandemic, which continues to impact the professional activity of Plaintiff's counsel. Notwithstanding, Plaintiff has actively and diligently pursued this litigation, by making timely filings and minimizing its requests for extensions of time.[1] Moreover, as indicated above, before discovery was stayed, Plaintiff served discovery requests upon the Government, and was expecting the Government's responses on the day when Defendant filed its Motion to Stay Discovery.[2]

Thus, while it may have been inadvertent for Plaintiff to not file its Motion to Amend at an earlier stage in this litigation, Plaintiff has been diligently pursuing this matter and has never displayed any dilatory intent.[3]

Lastly, Plaintiff acknowledges that its Motion to Amend is being made at an inconvenient time, and apologizes to the Court and the Government for any inconvenience caused. On June 8, 2020, Plaintiff has conferred with Defendant's counsel, Ms. Marcella Powell, Esq., and on June

---

[1] Plaintiff has filed one (1) request for an extension of time thus far in the instant case.

[2] In fact, in the spirit of cooperation, Plaintiff consented to Defendant's request for an extension of time to respond to Plaintiff's first discovery requests, and it was Plaintiff's understanding that such extension was needed in order for Defendant to finalize such responses; on the day when such responses were due, Defendant instead filed its Motion to Stay Discovery.

[3] From the very beginning, Plaintiff chose to commence this action by concurrently filing its summons and complaint, instead of availing itself of the possibility to commence this action simply by filing its summons, pursuant to USCIT Rule 3(a)(1).

10, 2020, Defendant's counsel has indicated that Defendant does not consent to the relief sought in this motion.

WHEREFORE, Plaintiff respectfully requests that the Court grant its motion to amend its complaint.

Respectfully Submitted,

Robert W. Snyder
Laura A. Moya
LAW OFFICES OF ROBERT W. SNYDER
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail: rsnyder@rwsnyderlaw.com

Dated: June 10, 2020
Irvine, CA

*Counsel for Plaintiff Aspects Furniture International, Inc.*

# EXHIBIT 1

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC.,<br><br>                Plaintiff,<br><br>    v.<br><br>UNITED STATES,<br><br>                Defendant. | Before: Hon. Mark A. Barnett, Judge<br><br>**Court No.** 18-00222 |

## FIRST AMENDED COMPLAINT

Plaintiff Aspects Furniture International, Inc. (hereinafter, "Plaintiff" and/or "AFI" / "Aspects"), by and through its attorneys, alleges and states as follows against the defendant United States of America (hereinafter, "Defendant" and/or the "United States"), for actions taken by the U.S. Customs and Border Protection (hereinafter, "CBP" and/or "Customs").

## JURISDICTION

1.      Plaintiff AFI brings this action against Defendant United States contest CBP's denial of the protests listed on the Summons in this action (hereinafter, the "Protests"), under Section 515 of the Tariff Act of 1930 ("Tariff Act"), as amended, codified at 19 U.S.C. § 1515. Specifically, Plaintiff AFI contests the untimely liquidation of the entries subject to the Protests (hereinafter, "Subject Entries" and/or "Entries"), under Section 504 of the Tariff Act of 1930 ("Tariff Act"), as amended, codified at 19 U.S.C. § 1504.

2.      Thus, the United States Court of International Trade (hereinafter, "USCIT" and/or the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(a).

**PLAINTIFF'S STANDING**

3.      Plaintiff AFI is the importer of record and paid antidumping duties in connection with the import of the subject merchandise into the United States. Further, Plaintiff filed the Protests pursuant to Section 514 of the Tariff Act, codified at 19 U.S.C. § 1514, which CBP denied pursuant to Section 515 of the Tariff Act, codified at 19 U.S.C. § 1515, and which are covered by this action.

4.      Plaintiff therefore has standing to bring this action against Defendant U.S.A., for actions taken by CBP, pursuant to 28 U.S.C. § 2631(a).

5.      In addition, Plaintiff has paid all duties, charges, and exactions prior to filing the Summons in this action, as provided for under 28 U.S.C. § 2637(a).

**TIMELINESS**

6.      Plaintiff AFI timely protested all Subject Entries with CBP and timely contests all protest denials to this Court. Specifically, CBP issued the protest denials that are the subject of this action on May 10, 2018. Plaintiff commenced this action within 180 days after the date of denial, with the concurrent filing of a Summons and Complaint, on October 27, 2018. Therefore, the action against Defendant is timely filed under 28 U.S.C. § 2636(a)(1).

**STATEMENT OF FACTS**

7.      The imported merchandise at issue is wooden bedroom furniture (hereinafter, "WBF") from the People's Republic of China (hereinafter, "PRC" and/or "China").

8.      On March 2, 2015, the U.S. Department of Commerce (hereinafter, "Commerce" and/or "DOC") initiated the instant tenth (10th) administrative review of WBF from China. *See*

**Page 2 of 10**

*Initiation of Antidumping and Countervailing Duty Administrative Reviews,* 80 Fed. Reg. 11,166, 11,168-70 (Dep't Commerce, March 2, 2015); *see also Notice of Amended Final Determination of Sales at Less than Fair Value and Antidumping Duty Order: Wooden Bedroom Furniture from the People's Republic of China,* 70 Fed. Reg. 329, 329 (Dep't Commerce Jan. 4, 2005).

9.     During such review, Commerce selected Shanghai Jian Pu Import & Export Co., Ltd. (hereinafter, "Jian Pu") as the sole mandatory respondent. *See Wooden Bedroom Furniture from the People's Republic of China: Preliminary Results of Antidumping Duty Administrative Review,* 80 Fed. Reg. 77321, 77321 (Dec. 14, 2015) (hereinafter, "Preliminary Results"); s*ee also Wooden Bedroom Furniture from the People's Republic of China: Partial Rescission of Antidumping Duty Administrative Review,* 80 Fed. Reg. 65198 (Oct. 26, 2015).

10.    On December 14, 2015, Commerce published its preliminary results in the Federal Register, in which it determined that Jian Pu was part of the PRC-wide entity, and thus applied the PRC-wide rate of 216.01% to Jian Pu's exports. Preliminary Results, 77322.

11.    Further, on April 11, 2016, Commerce published its results in the Federal Register, which left its Preliminary Results unchanged. *Wooden Bedroom Furniture from the People's Republic of China; Final Results and Final Determination of No Administrative Review, in Part: 2014 Administrative review,* 81 Fed. Reg. 21,319, 21,319 (Dep't Commerce Apr. 11, 2016) (hereinafter, "Final Results").

12.    Specifically, the Final Results confirmed Commerce's preliminary duty rate applied to Jian Pu's exports of 216.01%. and lifted the statutory suspension of liquidation of the Subject Entries. *Id.*

**Page 3 of 10**

13.    As a result, after the April 11, 2016 notice of removal of suspension, CBP started liquidating the Subject Entries of Jian Pu goods at the rate of 216.01%.

14.    On April 26, 2016, the American Furniture Manufacturers Committee for Legal Trade and Vaughan-Bassett Furniture Company, Inc. (collectively, "AFMC") filed a lawsuit against the United States. *Am. Furniture Mfrs. Comm. for Legal Trade, et al. v. United States*, Court No. 16-00070 (CIT March 13, 2017) (hereinafter, the "AFMC Litigation"). AFMC also filed a motion for a preliminary injunction, seeking to enjoin the liquidation of any unliquidated entries of subject WBF from China, exported by Jian Pu during the period January 1, 2014, through December 31, 2014. *Id.*

15.    On April 27, 2016, USCIT granted AFMC's request for preliminary injunction, and enjoined the liquidation of the Subject Entries. *AFMC Litigation.*

16.    On May 2, 2016, CBP (<u>not</u> Commerce) published a message in Customs' AD/CVD Search Portal (hereinafter, "ACE Services"), informing CBP port officials of the preliminary injunction and of the suspension of liquidation of the Subject Entries. *Message No. 6123302 (May 2, 2016),* available at http://aceservices.cbp.dhs.gov/adcvdweb/ad_cvd_msgs/21245/print (last visited June 10, 2020) (hereinafter, "May 2nd Message").

17.    The hearing in the AMFC Litigation was held before the USCIT on February 28, 2017. Transcript of Oral Argument, *AFMC Litigation* (hereinafter, "February 2017 Transcript").

18.    On March 13, 2017, the Court issued an order dismissing the AFMC Litigation for lack of subject matter jurisdiction. *Am. Furniture Mfrs. Comm. for Legal Trade v. United States*, Slip Op. 17-25, 39 I.T.R.D. 1025 (BNA) (CIT Mar. 13, 2017) (hereinafter, "March 13 Judgment").

**Page 4 of 10**

19.    On March 29, 2017, CBP published the USCIT order issued in the AFMC Litigation in its Customs Bulletin and Decisions Official Reporter. *U.S. Court of International Trade Slip Opinions,* Vol. 51, No. 13 (Cust. B. & Dec. Mar. 29, 2017).

20.    Finally, on May 30, 2017, CBP (<u>not</u> Commerce) published another message in ACE Services, this time informing CBP port officials that the suspension of liquidation of the Subject Entries had been lifted. *Message No. 7150306 (May 30, 2017)*, available at http://aceservices.cbp.dhs.gov/adcvdweb/ad_cvd_msgs/22887.pdf  (last visited June 10, 2020) (hereinafter, "May 30th Message").

21.    Subsequently, on November 24, 2017, CBP liquidated Entry Nos.: W69-3325900-5, W69-3325953-4, W69-3326026-8, W69-3329300-4, W69-3329302-0, W69-3329955-5, W69-3343109-1, W69-3345392-1, and W69-3368746-0 (hereinafter, "First Subject Entries").

22.    Further, on December 1, 2017, CBP liquidated Entry No.: W69-3327386-5 (hereinafter, "Last Subject Entry").

23.    Plaintiff AFI timely protested such liquidations. Specifically, on April 6, 2018, AFI filed Protest No.: 5201-18-100098 in connection with Entry Nos.: W69-3325900-5, W69-3325953-4, W69-3326026-8, W69-3329300-4, W69-3329302-0, W69-3329955-5, W69-3343109-1, W69-3345392-1, and W69-3368746-0. AFI argued that the liquidation of the First Subject Entries was untimely under 19 U.S.C. 1504(d), since the asserted liquidation date of November 24, 2017, occurred more than six (6) months after CBP received notice of the removal of the suspension of liquidation.

24.    The CBP Miami, FL Seaport (Port Code No.: 5201) failed to address such argument and denied Protest No.: 5201-18-100098 on May 10, 2018.

25.    Similarly, on April 16, 2018, AFI filed Protest No.: 5201-18-100100 in connection with Entry No.: W69-3327386-5. Again, AFI argued that the liquidation of the Last Subject Entry was untimely under 19 U.S.C. 1504(d), since the asserted liquidation date of December 1, 2017, occurred more than six (6) months after CBP received notice of the removal of the suspension of liquidation.

26.    The CBP Miami, FL Seaport (Port Code No.: 5201) failed to address such argument and denied Protest No.: 5201-18-100100 on May 10, 2018.

27.    AFI now brings this action against Defendant to contest the denial of the protests and the untimely liquidation of the Subject Entries by CBP.

## COUNT I

28.    Paragraphs 1 through 27 are hereby incorporated by reference.

29.    Section 1504(d) of Title 19 of the U.S.C. states, in relevant part, that

> "when a suspension required by statute or court order is removed, the Customs Service shall liquidate the entry . . . within 6 months after receiving notice of the removal from the Department of Commerce, other agency, or a court with jurisdiction over the entry. Any entry . . . not liquidated by the Customs Service within 6 months after receiving such notice shall be treated as having been liquidated at the rate of duty, value, quantity and amount of duty asserted at the time of entry by the importer of record . . ."

> 19  U.S.C. § 1504(d).

30.    For deemed liquidation under 19 U.S.C. § 1504(d) to occur, Customs must fail to liquidate an entry within six (6) months after receiving notice that the suspension of liquidation that was in place was removed. *See Fujitsu General America v. United States*, 283 F.3d 1364, 1376 (Fed. Cir. 2002). For notice to be sufficient under 19 U.S.C. § 1504(d), CBP must receive

**Page 6 of 10**

"unambiguous [notice] that the suspension of liquidation has been lifted." *NEC Solutions (Am.) v. United States*, 411 F.3d 1340, 1344 (Fed. Cir. 2005). However, the notice "does not need to include specific liquidation instructions from Commerce to Customs." *Int'l Trading Co. v. United States*, 281 F.3d 1268, 1270, 1276 (Fed. Cir. 2002). Moreover, while the U.S. Court of Appeals for the Federal Circuit (hereinafter, "Federal Circuit") has referred to a publication requirement, it has done so in the context of cases evincing Commerce's publication in the Federal Register of a "Timken notice"[1] or the amended final results of an administrative review. *See IMSS, LLC v. United States, Court No. 19-00029, Memorandum at 9 (Apr. 13, 2017)* (citing *Fujitsu,* 283 F.3d at 1369, 1380; *Int'l Trading*, 281 F.3d at 1270, 1275–76 (selecting the date of Federal Register publication because it would not afford "the government the ability to postpone indefinitely the removal of suspension of liquidation (and thus the date by which liquidation must be completed) as would be the case if the six-month liquidation period did not begin to run until Commerce sent a message to Customs advising of the removal of suspension of liquidation")).

31.    CBP liquidated the First Subject Entries on November 24, 2017. As such, to the extent Customs received notice pursuant to 19 U.S.C. § 1504(d) prior to May 24, 2017, CBP's liquidation of the First Subject Entries on November 24, 2017 was untimely, since it was performed more than six (6) months after receiving the notice of removal of suspension of liquidation of the First Subject Entries.

32.    Here, Customs' May 30th Message provided its port directors with liquidation instructions for the Subject Entries*, inter alia*. While the May 30th Message purported to

---

[1] Commerce's publishes a "Timken notice" to inform the public of a court decision "not in harmony with Commerce's determination."  Timken Co. v. United States, 893 F.2d 337, 341 (Fed. Cir. 1990).

establish that "[n]otice of the lifting of suspension occurred on the message date of these instructions," nothing in the May 30th Message indicated the source of the information contained therein or the date on which Customs received such notice of lifting of suspension of liquidation. *See IMSS*, Memorandum at 8 note 4; *see also Am. Int'l Chem., Inc. v. United States*, 29 CIT 735, 748, 387 F.Supp.2d 1258, 1269 (2005) (finding that the six-month liquidation period began on date Customs received notice, even though it was published the following day). Therefore, the May 30th Message, in and of itself, cannot constitute notice of removal of suspension of liquidation, as required under 19 U.S.C. § 1504(d), because its contents are not sufficient to ascertain the date on which Customs received such notice required under the statute; and thus the May 30th Message could not have triggered the six-month liquidation period provided for under 19 U.S.C. § 1504(d).

33.     Therefore, if CBP received notice of suspension of liquidation of the First Subject Entries before May 24, 2017, CBP's November 24, 2017 liquidation of the First Subject Entries was untimely, causing such entries to deem liquidated  "at the rate of duty, value, quantity, and amount of duty asserted by the importer of record."  19 U.S.C. § 1504(d).

## COUNT II

34.     Paragraphs 1 through 33 are hereby incorporated by reference.

35.     CBP liquidated the Last Subject Entry on December 1, 2017. Thus, even if CBP received the notice required under 19 U.S.C. § 1504(d) on May 30, 2017, which there is no evidence of, CBP's December 1, 2017 liquidation of the Last Subject Entry was untimely, because it was done more than six (6) months after receiving the purported notice on May 30, 2017.

**Page 8 of 10**

36.     Here, the May 30th Message stated that the injunction which enjoined the liquidation of the Subject Entries dissolved on May 12, 2017. As such, the latest date when Customs could have received the notice of removal of suspension of liquidation of the Subject Entries was May 30, 2017. Consequently, in accordance with 19 U.S.C. § 1504(d), any entries liquidated by CBP *after* November 30, 2017 (which is six months after May 30, 2017) were deemed liquidated at the duty rate asserted by the importer at the time of entry.

37.     Therefore, because the Last Subject Entry was liquidated by CBP on December 1, 2017, which is after November 30, 2017 (six months after the purported May 30, 2017 notice), the Last Subject Entry deemed liquidated on December 1, 2017 "at the rate of duty, value, quantity, and amount of duty asserted by the importer of record." 19 U.S.C. § 1504(d).

## PRAYER FOR RELIEF

38.     WHEREFORE, Plaintiff respectfully requests that this Court:

a)   Issue a judgment in Plaintiff's favor; and

b)   Hold that Protest No.: 5201-18-100098 was erroneously denied by CBP; and

c)   Hold that Protest No.: 5201-18-100100 was erroneously denied by CBP;

d)   Hold that the Entry Nos.: W69-3325900-5, W69-3325953-4, W69-3326026-8, W69-3329300-4, W69-3329302-0, W69-3329955-5, W69-3343109-1, W69-3345392-1, and W69-3368746-0 were untimely liquidated by Customs on November 24, 2017 and, as a result, such entries deemed liquidated under 19 U.S.C. § 1504(d) at the rate of duty, value, quantity, and amount of duty asserted by Plaintiff at the time such entries were made;

**Page 9 of 10**

e)  Hold that Entry No.: W69-3327386-5 was untimely liquidated by Customs on December 1, 2017 and, as a result, such entry deemed liquidated under 19 U.S.C. § 1504(d) at the rate of duty, value, quantity, and amount of duty asserted by Plaintiff at the time such entry was made;

f)  Order that the supplemental duty bills issued by Customs with respect to the Subject Entries be withdrawn, and that all payments of antidumping duties made by Plaintiff AFI pursuant to such bills be refunded, together with interest from the date of payment to Customs through the date of refund; and

g)  Grant Plaintiff such other and further relief as this Court deems just and proper.

Respectfully Submitted,

Robert W. Snyder
Laura A. Moya
LAW OFFICES OF ROBERT W. SNYDER
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail: rsnyder@rwsnyderlaw.com

Dated: June 10, 2020          *Counsel for Plaintiff Aspects Furniture*
Irvine, CA                    *International, Inc.*

**Page 10 of 10**

# UNITED STATES COURT OF INTERNATIONAL TRADE

ASPECTS FURNITURE INTERNATIONAL, INC.,

                    Plaintiff,

     v.

UNITED STATES,

                    Defendant.

Before: Hon. Mark A. Barnett, Judge

**Court No.** 18-00222

## CERTIFICATE OF SERVICE

I, Robert W. Snyder, hereby certify that on June 10, 2020, the attached documents were served upon the following party, via electronic service (e-mail) *only*:

**On behalf of the United States:**

Marcella Powell
Senior Trial Counsel
Civil Division, U.S. Department of Justice
Commercial Litigation Branch
marcella.powell@usdoj.gov

Robert W. Snyder
LAW OFFICES OF ROBERT W. SNYDER
6 Morgan, Suite 114
Irvine, CA 92618
Telephone: (949) 453-8688
E-mail: rsnyder@rwsnyderlaw.com

Dated: June 10, 2020
Irvine, CA

*Counsel for Plaintiff Aspects Furniture International, Inc.*