Slip Op. 20-120

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| ASPECTS FURNITURE INTERNATIONAL, INC., <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant. | Before: Mark A. Barnett, Judge <br> Court No. 18-00222 |

## <u>OPINION AND ORDER</u>

[Granting Plaintiff's motion for leave to file a first amended complaint.  Denying as moot Defendant's motion for judgment on the pleadings and Plaintiff's cross-motion for partial judgment on the pleadings.]

Dated: August 17, 2020

<u>Robert W. Snyder</u> and <u>Laura A. Moya</u>, Law Offices of Robert W. Snyder, of Irvine, CA, for Plaintiff.

<u>Marcella Powell</u>, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant.  With her on the brief were <u>Justin R. Miller</u>, Attorney-in-Charge, International Trade Field Office, <u>Jeanne E. Davidson</u>, Director, and <u>Ethan P. Davis</u>, Acting Assistant Attorney General.  Of counsel on the brief was <u>Paula Smith</u>, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Barnett, Judge:  In this action, Plaintiff Aspects Furniture International, Inc.

("Plaintiff" or "AFI") contests the denial of two protests[1] challenging U.S. Customs and

Border Protection's ("CBP" or "Customs") allegedly untimely liquidation of ten entries

---

[1] AFI contests the denial of Protest No. 5201-18-100098, covering nine entries (hereinafter, "the nine subject entries"), and Protest No. 5201-18-100100, covering one entry (hereinafter, "the single subject entry").  Summons, ECF No. 1.  All ten entries are collectively referred to as "the subject entries."

associated with those protests.  *See generally* Compl., ECF No. 2.  The matter is before

the court on Defendant's ("the Government") motion for judgment on the pleadings

pursuant to U.S. Court of International Trade ("USCIT") Rule 12(c), Def.'s Mot. for J. on

the Pleadings and accompanying Def.'s Mem. in Supp. of its Mot. for J. on the

Pleadings ("Def.'s Mot. J."), ECF No. 35; AFI's cross-motion for partial judgment on the

pleadings or, alternatively, for partial summary judgment, Pl.'s Cross-Mot. for Partial J.

on the Pleadings or, in the alternative, for Partial Summ. J., and Resp. in Opp'n to Def.'s

Mot. for J. on the Pleadings ("Pl.'s Cross-Mot. J."), ECF No. 43; and AFI's motion for

leave to file a first amended complaint, Mot. for Leave to File First Am. Compl. ("Pl.'s

Mot. Am. Compl."), ECF No. 58.  For the reasons discussed herein, AFI's motion for

leave to file a first amended complaint is granted.  Accordingly, the Government's

motion for judgment on the pleadings and AFI's cross-motion for partial judgment on the

pleadings is denied as moot.  *See, e.g.*, *Pac. Bell Tele. Co. v. Linkline Commc'ns, Inc.*,

555 U.S. 438, 456 n.4 (2009) ("Normally, an amended complaint supersedes the

original complaint.").

## BACKGROUND

The imported merchandise at issue in this case consists of wooden bedroom

furniture from the People's Republic of China.  Pl.'s Mot. Am. Compl., Ex.1 ("Proposed

Am. Compl.") ¶ 7.  AFI is the importer of record.  *Id*. ¶ 3.  On various dates in January,

February, July, and December of 2014, AFI made ten entries of wooden bedroom

furniture.  *See* Summons (schedule of protests).

On April 11, 2016, the U.S. Department of Commerce ("Commerce") published the final results of its tenth administrative review of the antidumping duty order on wooden bedroom furniture from China.  Proposed Am. Compl. ¶ 11 (citing *Wooden Bedroom Furniture From the People's Republic of China*, 81 Fed. Reg. 21,319 (Dep't Commerce Apr. 11, 2016) (final results and final determination of no shipments, in part; 2014 admin. review) ("*Final Results*")).  Publication of the *Final Results* "lifted the statutory suspension of liquidation of the [s]ubject [e]ntries."  *Id.* ¶ 12.  Thereafter, CBP began liquidating subject entries "at the rate of 216.01 [percent]."  *Id.* ¶ 13.[2]

On April 27, 2016, the court issued a statutory injunction to enjoin the liquidation of certain entries during a lawsuit filed to challenge the *Final Results*.  Proposed Am. Compl. ¶¶ 14–15; *see also Am. Furniture Mfrs. Comm. for Legal Trade, et al. v. United States*, Court No. 16-cv-00070 (CIT Apr. 27, 2016) (hereinafter, "the *AFMC* litigation").  On February 28, 2017, the court held a hearing in connection with the *AFMC* litigation.  Proposed Am. Compl. ¶ 17.  On March 13, 2017, the court dismissed that lawsuit for lack of subject matter jurisdiction.  *Id.* ¶ 18.

On March 29, 2017, CBP published the court's judgment in the *AFMC* litigation in its Customs Bulletin and Decisions Official Reporter.  *Id.* ¶ 19.  Thereafter, on May 30, 2017, Customs published Message No. 7150306 in its online antidumping and

---

[2] Liquidation of subject entries is suspended by operation of law when Commerce publishes an affirmative preliminary determination in an antidumping investigation or an affirmative final determination following a negative preliminary determination.  19 U.S.C. §§ 1673b(d)(2)(A), 1673d(c)(1)(C).  The suspension of liquidation remains in place until the timeframe for requesting a periodic review has expired, 19 C.F.R. § 351.212(c)(1), or Commerce issues the final results of any such review, *id.* § 351.212(b)(1).

countervailing duty search portal, referred to as "ACE Services," which served to

"inform[] CBP port officials that the suspension of liquidation of the [s]ubject [e]ntries

had been lifted." *Id.* ¶ 20.

On November 24, 2017, CBP liquidated the nine subject entries. *Id.* ¶ 21. On

December 1, 2017, CBP liquidated the single subject entry. *Id.* ¶ 22. AFI timely

protested the liquidations. *Id.* ¶ 23. CBP denied AFI's protests on May 10, 2018. *Id*.

¶¶ 24, 26.

On October 27, 2018, AFI timely commenced this action challenging the denial of

its protests. *See* Summons. On June 21, 2019, the court denied the Government's

partial motion to dismiss for lack of subject matter jurisdiction. *Aspects Furn. Int'l, Inc. v.*

*United States* ("*AFI*"), 43 CIT ___, 392 F. Supp. 3d 1317 (2019). On July 19, 2019, the

Government filed its Answer to Plaintiff's Complaint. Ans., ECF No. 28.

On July 26, 2019, the court entered a scheduling order, pursuant to which "[a]ny

motions regarding the pleadings or other preliminary matters" were due by August 9,

2019. Scheduling Order (July 26, 2019) ("Scheduling Order"), ECF No. 31. On January

8, 2020, the Government filed its motion for judgment on the pleadings. Def.'s Mot. J.

Shortly thereafter, the court granted the Government's motion to stay discovery. Order

(Jan. 14, 2020) ("Stay Order"), ECF No. 40. On February 24, 2020, Plaintiff opposed

the Government's motion and filed a cross-motion for partial judgment on the pleadings

or, alternatively for partial summary judgment. Pl.'s Cross-Mot. J. Those motions have

been fully briefed. *See* Def.'s Reply in Further Supp. of its Mot. for J. on the Pleadings

and in Opp'n to Pl.'s Cross-Mot. for Partial J. on the Pleadings or, in the alternative, for

Partial Summ. J., ECF No. 55; Pl.'s Reply in Further Supp. of its Cross-Mot. for Partial

J. on the Pleadings or, in the alternative, for Partial Summ. J., ECF No. 56.  On June 4,

2020, the court held a telephone conference with the parties in connection with the

pending motions.  *See* Docket Entry, ECF No. 59.

On June 10, 2020, AFI moved for leave to amend its complaint.  Pl.'s Mot. Am.

Compl.  On July 8, 2020, the Government filed its opposition to AFI's motion.  Def.'s

Mem. in Opp'n to Pl.'s Mot. for Leave to File the First Am. Compl. ("Def.'s Opp'n Am.

Compl."), ECF No. 63.

### JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction pursuant to section 514(a) of the Tariff Act of 1930, as

amended, 19 U.S.C. § 1514(a) (2012),[3] and 28 U.S.C. § 1581(a) (2012).

Pursuant to USCIT Rule 15(a), a plaintiff may amend its complaint more than 21

days after service of a responsive pleading "only with the opposing party's written

consent or the court's leave."  USCIT Rule 15(a)(2) (applicable to pleadings); *see*

*also* USCIT Rule 7(a)(1) (a complaint is a pleading).  Whether to grant leave to amend a

complaint is committed to the court's discretion.  *See, e.g.*, *Foman v. Davis*, 371 U.S.

178, 182 (1962); *Fuwei Films (Shandong) Co. v. United States*, 35 CIT 1229, 1229, 791

F. Supp. 2d 1381, 1383 (2011).  "The court should freely give leave when justice so

---

[3] All references to the United States Code are to the 2012 edition, which was in effect at the time of importation, unless otherwise stated.  All references to the Code of Federal Regulations are to the 2014 edition, which was in effect when the last entry at issue here occurred, unless otherwise stated.  The 2013 and 2014 versions are the same in all relevant respects.

requires."  USCIT Rule 15(a)(2).  Leave may be denied when the court finds "undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party

by virtue of allowance of the amendment, [or] futility of amendment."  *Foman*, 371 U.S.

at 182.

Once a scheduling order is established, a motion to amend a pleading is subject

to any deadline established in that scheduling order.  *See* USCIT Rule 16(b)(3)(A).

USCIT Rule 16(b)(4), in conjunction with USCIT Rule 6(b)(1), permits a schedule to be

modified for good cause with the court's consent.  When a motion effectively seeks to

extend a deadline that has already passed, it is properly treated as a motion for an

extension of time, out of time, and USCIT Rule 6(b)(1)(B) also applies.  *See United

States v. Horizon Prods. Int'l, Inc.*, 38 CIT ___, ___, 34 F. Supp. 3d 1365, 1367 (2014).

In addition to good cause, a motion filed out of time must show "excusable neglect or

circumstances beyond the control of the party."  USCIT Rule 6(b)(1)(B).

Good cause requires the moving party to show that the deadline for which an

extension is sought cannot reasonably be met despite the movant's diligent efforts to

comply with the schedule.  *See High Point Design LLC v. Buyers Direct, Inc.*, 730 F.3d

1301, 1319 (Fed. Cir. 2013) (discussing "good cause" in the context of Federal Rule of

Civil Procedure 16(b)); *Horizon Prods.*, 34 F. Supp. 3d at 1367.

The court assesses excusable neglect by considering: "(1) the danger of

prejudice to the opposing party, (2) the length of the delay and its potential impact on

judicial proceedings, (3) the reason for the delay, including whether it was within the

reasonable control of the movant, and (4) whether the movant acted in good faith."

*Horizon Prods.*, 34 F. Supp. 3d at 1367 (citing *Pioneer Inv. Servs. v. Brunswick Assocs.*,

507 U.S. 380, 392, 395 (1993)).  Furthermore, the court may consider "all relevant

circumstances surrounding the party's omission."  *Home Prods. Int'l, Inc. v. United*

*States*, 31 CIT 1706, 1709, 521 F. Supp. 2d 1382, 1385 (2007) (quoting *Pioneer*, 507

U.S. at 395).

## DISCUSSION

### I.  Legal Framework

When a statutory or court-ordered suspension of liquidation is lifted, Customs

shall liquidate an entry "within 6 months after receiving notice of the removal from

[Commerce], [an]other agency, or a court with jurisdiction over the entry," otherwise the

entry will be deemed liquidated "at the rate of duty, value, quantity, and amount of duty

asserted by the importer of record."  19 U.S.C. § 1504(d).  Thus, for an entry to be

deemed liquidated, "(1) the suspension of liquidation that was in place must have been

removed; (2) Customs must have received notice of the removal of the suspension; and

(3) Customs must not liquidate the entry at issue within six months of receiving such

notice."  *Cemex, S.A. v. United States*, 384 F.3d 1314, 1321 (Fed. Cir. 2004) (quoting

*Fujitsu Gen. Am., Inc. v. United States*, 283 F.3d 1364, 1376 (Fed. Cir. 2002)).  The

U.S. Court of Appeals for the Federal Circuit ("Federal Circuit") has interpreted the

statute to require notice that is unambiguous and public.  *See id.*

An entry that liquidated by operation of law may, however, be voluntarily

reliquidated by CBP pursuant to 19 U.S.C. § 1501 within the time period provided

therein.  The version of section 1501 that was in effect at the time of importation

provided that

> [a] liquidation made in accordance with section 1500 [i.e., a manual
> liquidation] or 1504 [i.e., a deemed liquidation] . . . may be reliquidated in
> any respect by [Customs], notwithstanding the filing of a protest, within
> ninety days from the date on which notice of the original liquidation is
> given or transmitted to the importer, his consignee or agent.  Notice of
> such reliquidation shall be given or transmitted in the manner prescribed
> with respect to original liquidations under section 1500(e) of this title.

19 U.S.C. § 1501;[4] *cf.* 19 C.F.R. § 173.3(a) (providing for voluntary reliquidation

"[w]ithin 90 days from the date notice of deemed liquidation . . . is given to the

importer").[5]  Section 1500(e) directs Customs to "give or transmit, pursuant to an

electronic data interchange system, notice of such liquidation to the importer . . .

in such form and manner as [CBP] shall by regulation prescribe."  19 U.S.C.

§ 1500(e).

Customs' regulation provides that "[n]otice of liquidation of formal entries

will be made on a bulletin notice of liquidation, CBP Form 4333," 19 C.F.R.

---

[4] On February 24, 2016, Congress amended section 1501, *inter alia*, to provide for
reliquidation "within ninety days from the date of the original liquidation."  Trade
Facilitation and Enforcement Act of 2015 ("TFEA"), Pub. L. No. 114–125, § 911, 130
Stat. 122, 240 (2016).  Thus, under the current version of the statute, the 90-day clock
begins to run on the date of the manual liquidation or the date on which an entry
deemed liquidated, not the date on which notice of such liquidation was provided.
*Compare* 19 U.S.C. § 1501 (2012), *with* 19 U.S.C. § 1501 (2018).

[5] Subsection (a) of Customs' regulation was amended in 2017 to provide for
reliquidation by the "Center director" rather than the "port director," but otherwise
remains unchanged from the version in effect when the entries were made.  *See
Regulatory Implementation of the Ctrs. of Excellence and Expertise*, 81 Fed. Reg.
92,978, 92,999 (CBP Dec. 20, 2016) (interim final rule; eff. Jan. 19, 2017).

§ 159.9(a), which "will be posted for the information of importers in a conspicuous place in the customhouse at the port of entry," *id.* § 159.9(b).[6]

## II.  Plaintiff's Original Complaint and Proposed First Amended Complaint

In its original complaint, AFI alleged that Customs untimely liquidated the subject entries and, moreover, those entries liquidated by operation of law on November 12, 2017, at the latest.  Compl. ¶ 43.  According to AFI, Customs received notice of the removal of suspension on or before May 12, 2017, which notice triggered the six-month timeframe within which Customs is to liquidate the entries to avoid a deemed liquidation. *Id.* ¶¶ 25–42.  Specifically, AFI alleged that Customs received notice on the following dates: (1) April 11, 2016, when Commerce published the *Final Results* in the Federal Register, *id.* ¶ 29; (2) March 13, 2017, when the court issued its final judgment in the *AFMC* litigation, *id.* ¶¶ 30, 35–36; (3) March 29, 2017, when Customs published notice of the court's opinion in the Customs Bulletin and Decisions Official Reporter, *id.* ¶ 30; or (4) May 12, 2017, when the dismissal of the *AFMC* litigation became final and conclusive, *id.* ¶¶ 31, 41.  AFI also alleged that, assuming the liquidation period ended on November 30, 2017, Customs nevertheless untimely liquidated the single subject entry on December 1, 2017.  *Id.* ¶ 43.

---

[6] Although 19 U.S.C. § 1500(e) was amended in 1993 to provide for electronic notice of liquidation, *see* N. Am. Free Trade Agreement Implementation Act, Pub. L. No. 103-182, § 638, 107 Stat. 2057(1993), it was not until 2017 that Customs made corresponding amendments to 19 C.F.R. § 159.9.  *See generally Electronic Notice of Liquidation*, 81 Fed. Reg. 89,375 (CBP Dec. 12, 2016) (final rule; eff. Jan. 14, 2017).

AFI's proposed amended complaint differs from its original complaint in the following respects.  First, AFI has separated its claims regarding the nine subject entries (count one) and the single subject entry (count two).  Proposed Am. Compl. ¶¶ 28–33, 34–37.  With respect to the nine subject entries, AFI alleges that "nothing in" Message No. 7150306, published by CBP on May 30, 2017, "indicated the source of the information contained therein or the date on which Customs received such notice of lifting of suspension of liquidation."  *Id.* ¶ 32.  AFI alleges further that, "to the extent Customs received notice [of the lifting of suspension of liquidation] pursuant to 19 U.S.C. § 1504(d) prior to May 24, 2017, CBP's liquidation of the [nine subject entries] was untimely."  *Id.* ¶ 31; *see also id.* ¶ 33.  With respect to the single subject entry, AFI alleges that Customs' liquidation of the entry on December 1, 2017 was untimely "because it was done more than six (6) months after receiving the purported notice on May 30, 2017."  *Id.* ¶ 35.  According to AFI, therefore, the subject entries "deemed liquidated 'at the rate of duty, value, quantity, and amount of duty asserted by the importer of record.'"  *Id.* ¶¶ 33, 37 (quoting 19 U.S.C. § 1504(d)).

Second, AFI no longer alleges that Customs received notice of the lifting of suspension of liquidation on April 11, 2016, March 13, 2017, March 29, 2017, or on May 12, 2017 solely by virtue of the finality of the judgment issued in the *AFMC* litigation. *Compare* Compl. ¶¶ 25–42, *with* Proposed Am. Compl. ¶¶ 28–37.

## III. Parties' Contentions

AFI contends that the interests of justice would be served by granting its motion to amend and that the amendments would not prejudice the Government.  Pl.'s Mot.

Am. at 3–4.  In that regard, AFI explains that the amendments are responsive to a

recent Memorandum and Order issued by the court in a related case.  *Id.* at 3 (citing

*IMSS, LLC v. United States*, Court No. 19-cv-00029 (CIT Apr. 13, 2020), ECF No. 36

("*IMSS* Mem.")).[7]  AFI also states that the amendments further narrow the issues in this

case to (1) whether Message No. 7150306 constituted the requisite notice pursuant to

19 U.S.C. § 1504(d), or (2) whether Customs received such notice on an earlier date.

*Id.*  According to AFI, the amendments will not prejudice the Government or cause

undue delay because discovery had been stayed and the "amended claims do not

greatly depart from the general allegations in Plaintiff's original complaint."  *Id.* at 4.  AFI

further contends that the court should find that any delay in seeking leave to amend

"was due to excusable neglect."  *Id.* at 5.  AFI avers that it has "actively and diligently

pursued this litigation" and "inadvertent[ly]" failed to file this motion "at an earlier stage in

the litigation."  *Id.*

The Government contends that AFI has not shown excusable neglect for failing

to seek leave to amend sooner, Def.'s Opp'n Am. Compl. at 8, and, thus, the court need

not consider the requirements of USCIT Rule 15(a)(2), *id.* at 10.  With respect to

excusable neglect, the Government argues that AFI has failed to address the relevant

criteria.  *Id.* at 8–10.  The Government further contends that AFI's claim that Customs

may have received notice of the lifting of suspension before May 24, 2017 is

---

[7] *IMSS* concerns a single entry that was likewise subject to the tenth administrative
review of the antidumping duty order on wooden bedroom furniture from China.  *IMSS*
Mem. at 2.  At issue in that case is the timeliness of Customs' reliquidation of an entry
that the plaintiff and defendant agree liquidated by operation of law.  *Id.* at 7.

speculative, lacking any connection to Message No. 7150306, and would permit AFI "to embark on a 'fishing expedition' in an effort to discover information that is non-public and unrelated to the public [Message No. 7150306]." *Id.* at 9.  The Government suggests it would be prejudiced by the expenditure of resources necessary to address AFI's "purposeless discovery," *id.*, and the need for another responsive pleading and dispositive motion, *id.* at 11.

The Government also contends that AFI's amendment would be futile because the proposed claims would not survive a motion to dismiss for failure to state a claim pursuant to USCIT Rule 12(b)(6).  *Id.* at 10–17.  The Government advances three arguments in that regard: (1) AFI has failed to allege facts regarding the public and unambiguous notice necessary for a deemed liquidation to occur, *id.* at 12–14; (2) any non-public notice received before May 30, 2017 cannot, as a matter of law, trigger the six-month deemed liquidation period, *id.* at 14–16; and (3) any entries that liquidated by operation of law were timely reliquidated by Customs within 90 days of the date of deemed liquidation, *id.* at 16–17 (citing 19 U.S.C. § 1501 (2018)).

## IV. Analysis

The court first addresses whether AFI has made the requisite showings of good cause and excusable neglect pursuant to USCIT Rules 6(b)(1)(B) and 16(b)(4) before turning to the requirements of USCIT Rule 15(a)(2).[8]

---

[8] At least one court has recognized the "tension" that exists between the permissive Federal Rule of Civil Procedure 15(a)(2) standard applicable to a motion for leave to amend a complaint and the need to demonstrate good cause and excusable neglect before the court will consider the merits of such a motion.  *Adams v. City of*

Diligence is the "primary consideration" under the general good cause standard applicable to USCIT Rules 6(b) and 16(b)).  *Horizon Prods.*, 34 F. Supp. 3d at 1367. When the amendment "'rests on information that the party knew, or should have known' before the deadline," good cause may not be found.  *Rienzi and Son, Inc. v. United States*, 40 CIT ___, ___. 180 F. Supp. 3d 1349, 1353 (2016) (quoting *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 889 F. Supp. 2d 453, 457 (S.D.N.Y. 2003)).

Since the inception of this case, AFI has sought to challenge Customs' allegedly untimely liquidations of the subject entries.  *See* Compl. ¶ 43.  AFI initially alleged several theories regarding the way in which CBP received public and unambiguous notice of the lifting of suspension of liquidation following the conclusion of the *AFMC* litigation sufficient to trigger the six-month deemed liquidation period.  *See id.* ¶¶ 25–42. In *IMSS*, however, the court held that those events could not, as a matter of law, constitute adequate notice pursuant to 19 U.S.C. § 1504(d).  *See IMSS* Mem. at 5 n.3, 7.  The court's holding in *IMSS*, in conjunction with briefing on the cross-motions for judgment on the pleadings filed in this case, *see, e.g.*, Def.'s Mot. J. at 10–12 (arguing that AFI's claims of deemed liquidation must fail), revealed the deficiencies in AFI's allegations.  While, to some extent, AFI's proposed amendments rest on a new factual

---

*Indianapolis*, 742 F.3d 720, 733–34 (7th Cir. 2014); *see also United States v. Univar USA, Inc.*, 40 CIT ___, ___, 195 F. Supp. 3d 1312, 1317 (2016) (noting that the court may refer to cases interpreting the analogous Federal Rule of Civil Procedure for guidance).  There, as here, the parties had agreed to a scheduling order that contained a deadline relevant to motions to amend the pleadings.  *See id.* at 726; Scheduling Order.  Accordingly, the court will consider whether AFI has met the requirements of good cause and excusable neglect before considering the requirements of USCIT Rule 15(a)(2).  *Adams*, 742 F.3d at 734; *Rienzi*, 180 F. Supp. 3d at 1351–52.

allegation regarding Customs' potential receipt of notice of the lifting of suspension of

liquidation before May 24, 2017, Proposed Am. Compl. ¶ 31, that allegation is the

product of AFI's altered legal theory following the court's ruling in *IMSS* regarding the

sufficiency of notice for purposes of 19 U.S.C. § 1504(d), *see* Pl.'s Mot. Am. at 3.  Thus,

this case is distinguishable from others where the court has found that the plaintiff was

not diligent in raising factual allegations, the relevance of which the plaintiff had long

been aware.  *Cf. Rienzi*, 180 F. Supp. 3d at 1353 (denying leave to amend when the

plaintiff sought to revise "its description of the imported merchandise at issue, the

details of which" had been available to the plaintiff for "more than a decade"); *Perfect

Pearl*, 899 F. Supp. 2d at 458–59 (denying leave to amend to add facts the plaintiff had

been aware of for one year).

> To the extent that "diligence" also requires timely action, AFI filed its motion less

than 60 days after the court issued the referenced ruling in *IMSS* and about one week

after a telephone conference concerning the pending cross-motions for judgment on the

pleadings.  *See supra* pp. 5, 11.  While AFI likely could have filed its motion sooner,

there is no indication that AFI sought to delay the case.  Accordingly, good cause exists

to permit AFI the opportunity to replead its claims.[9]

---

[9] In its ruling on the Government's partial motion to dismiss for lack of subject matter jurisdiction, the court discussed "the concept of 'informed compliance,'" which concept was introduced as part of the Customs Modernization Act of 1993 ("the Mod Act").  *AFI*, 392 F. Supp. 3d at 1324 & n.11 (explaining that "[t]he Mod Act was enacted as Title VI to the North American Free Trade Agreement Implementation Act, Pub. L. No. 103-182, 107 Stat. 2057 (1993)").  Informed compliance "represents the idea 'that importers have a right to be informed about customs rules and regulations, as well as interpretive rulings, and to expect certainty that [CBP] will not unilaterally change the rules without

Examining whether excusable neglect has been demonstrated pursuant to Rule

6(b)(1)(B) requires the court to consider such factors as prejudice to the Government,

the length and reason for the delay, and whether AFI acted in good faith.  *Horizon*

*Prods.*, 34 F. Supp. 3d at 1367 (citation omitted).  For the following reasons, the court

finds that AFI has made this showing.

The court first finds that AFI's amendments would not unduly prejudice the

Government.  The Government argues that Customs' Message No. 7150306 "is the

only public notice of the removal of suspension of liquidation" and AFI's claim that

Customs may have received earlier notice is speculative and unrelated to that message.

Def.'s Opp'n Am. Compl. at 9.  In *IMSS*, the court rejected the Government's argument

that the date of publication *necessarily* controls the inquiry, explaining in the context of

analogous facts:

---

providing importers proper notice and an opportunity for comment.'"  *Id.* at 1324
(quoting S. Rep. No. 103–189 at 63–64 (1993)).  The legislative history of the Mod Act
indicates that the concept of informed compliance also relates to the notion of "'shared
responsibility' between Customs and the trade community."  *Id.* at 1324 n.12 (quoting
*Precision Specialty Metals, Inc. v. United States*, 25 CIT 1375, 1388, 182 F. Supp. 2d
1314, 1328 (2001)); *see also Customs Modernization and Informed Compliance Act:
Hearing on H.R. 3935 Before the Subcomm. on Trade of the H. Comm. on Ways and
Means,* 102d Cong. 91 (1992) (statement of Commissioner Carol Hallett, United States
Customs Service).  "Shared responsibility means that 'Customs must do a better job of
informing the trade community of how Customs does business; and the trade
community must do a better job to assure compliance with U.S. trade rules.'"  *AFI*, 392
F. Supp. 3d at 1324 n.12 (quoting *Precision Specialty Metals*, 25 CIT at 1388, 182 F.
Supp. 2d at 1328).  It appears to the court that a more efficient and expeditious
resolution of this case may be achieved if both Parties devote greater attention to the
principles of informed compliance and shared responsibility; in particular, with respect to
the sharing of information about the manner in which Customs receives liquidation
instructions from Commerce and the incorporation of that information into an
assessment of the viability of certain claims.

> While the Federal Circuit has referred to a publication requirement, *see, e.g.*, *Cemex*, 384 F.3d at 1321 & n.5, it has done so in the context of cases evincing Commerce's publication in the *Federal Register* of a "*Timken* notice" or the amended final results of an administrative review, *see Fujitsu Gen. Am.*, 283 F.3d at 1369, 1380; *Int'l Trading Co. v. United States*, 281 F.3d 1268, 1270, 1275–76 (Fed. Cir. 2002) (selecting the date of *Federal Register* publication because it would not afford "the government the ability to postpone indefinitely the removal of suspension of liquidation (and thus the date by which liquidation must be completed) as would be the case if the six-month liquidation period did not begin to run until Commerce sent a message to Customs advising of the removal of suspension of liquidation").  There is no such *Federal Register* notice implicated in the court's disposition of this case.  Thus, at a minimum, *to the extent discovery reveals that Customs received unambiguous notice of the lifting of suspension of liquidation on a date other than May 30, 2017, the court will need to determine when the six-month period for deemed liquidation began to run.  Cf. Am. Int'l Chem., Inc. v. United States*, 29 CIT 735, 748, 387 F. Supp. 2d 1258, 1269 (2005) (the six-month period began on date Customs received notice even though it was published the following day).

*IMSS* Mem. at 8–9 (emphasis added) (footnote omitted).  So too here, the court is

unable to conclude, as a matter of law, that the date on which Customs published

Message No. 7150306 triggered the six-month deemed liquidation period.

     Moreover, the possibility that Customs received *non-public* notice of the lifting of

suspension of liquidation before publishing Message No. 7150306 is precisely why AFI

was unable to allege the date of receipt with greater specificity.  Discerning those facts

through discovery would not necessarily lead to a "fishing expedition," Def.'s Opp'n Am.

Compl. at 9, and there are procedural remedies available to the Government in the

event any discovery request is overly broad, *see* USCIT Rule 26(b)(2)(C) (permitting the

court to limit the extent of proposed discovery if it "is outside the scope permitted by

Rule 26(b)(1)"); USCIT Rule 26(b)(1) (providing for the discovery of information

"relevant to any party's claim or defense"); Fed. R. Civ. P. 26(b) adv. comm. note to

1983 am. (noting the court's authority to limit discovery "directed to matters that are

otherwise proper subjects of inquiry" when it is "redundant or disproportionate").  The

court's stay of discovery during the pendency of the cross-motions for judgment on the

pleadings further minimizes any prejudice to the Government.  *See* Stay Order.

     With respect to the reason for and extent of the delay, as discussed above in the

context of good cause, AFI's motion was prompted by the court's ruling in *IMSS* and

developments in this case.  *See supra* pp. 13–14.  Moreover, AFI filed its motion

reasonably soon thereafter so as not to delay the proceeding.  Given the minimal

prejudice to the Government, the length of the delay does not merit denial of AFI's

motion.  *See Rockwell Automation, Inc. v. United States*, 38 CIT ___, ___, 7 F. Supp.

3d 1278, 1292 (2014) (stating that the length of the delay is "typically accord[ed]

relatively little weight, because (for a variety of reasons) the length of the delay in most

cases is minimal, both in absolute and relative terms").  Thus, based on the foregoing,

the court finds that AFI has demonstrated excusable neglect for its untimely motion.

     Turning to the requirements of USCIT Rule 15(a)(2), leave to amend should be

granted unless the court finds "undue delay, bad faith or dilatory motive on the part of

the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, [or]

futility of amendment."  *Foman*, 371 U.S. at 182.  For the reasons already discussed,

the court does not find that undue delay, bad faith, dilatory motive, or undue prejudice to

the Government merit denial of AFI's motion.  *See supra* pp. 13–17.  Additionally,

because this is AFI's first motion for leave to amend its complaint, AFI "should be

offered at least one opportunity to replead in order to correct the defects in the original

complaint" unless the proposed amendments would be futile. *Wallace v. Conroy*, 945 F.

Supp. 628, 639 (S.D.N.Y. 1996) (citing, *inter alia*, *Foman*, 371 U.S. at 182).  As

discussed below, the Government's arguments regarding futility of amendment are not

persuasive.

With respect to the nine subject entries, the Government first argues that AFI has

"fail[ed] to allege any date or event to qualify for the removal of suspension of

liquidation" and has failed to allege any form of public notice. Def.'s Opp'n Am. Compl.

at 13.  Thus, according to the Government, AFI has not alleged facts demonstrating that

the nine subject entries liquidated by operation of law. *Id.* at 14.  The Government's

argument lacks merit.

For a deemed liquidation to occur, the statute requires, *inter alia*, Customs to

receive notice of the removal of suspension from Commerce, another agency, or a court

of competent jurisdiction.  19 U.S.C. § 1504(d).  According to the Federal Circuit, that

notice must be both unambiguous and public.  *Cemex*, 384 F.3d at 1321.

However, as discussed, this case does not involve a public communication from

Commerce to Customs, for example, in the form of a Federal Register notice. *See*

*supra* pp. 15–16.  The Government does not dispute AFI's allegations that Customs

rendered Message No. 7150306 publicly accessible, Proposed Am. Compl. ¶ 20, or that

the contents of Message No. 7150306 do not reveal the source of the contents or the

date on which Customs received the information that formed the basis for liquidation, *id.*

¶ 32.  Instead, the Government points to a declaration it submitted in connection with its

motion for judgment on the pleadings that purports to demonstrate that Commerce

issued the liquidation instructions constituting Message No. 7150306 to CBP on May

30, 2017.  Def.'s Opp'n Am. Compl. at 13 (citing Decl. of Bradley Dauble, ECF No. 55-

1).

    Typically, "a motion to amend is adjudicated without resort to any outside

evidence," *DiPace v. Goord*, 308 F. Supp. 2d 274, 278 (S.D.N.Y. 2004), because the

test of futility is whether "the proposed new claim cannot withstand a 12(b)(6) motion to

dismiss for failure to state a claim," *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110

(2nd Cir. 2001).  While the court may consider extrinsic evidence when the parties have

conducted discovery and the motion to amend is filed in response to a motion for

summary judgment, *see id.*, that is not the case here.  It would therefore be

inappropriate for the court to consider outside evidence.  *See Rose v. Hartford*

*Underwriters Ins. Co*., 203 F.3d 417, 420–21 (6th Cir. 2000) (district court abused its

discretion in denying leave to amend prior to briefing on summary judgment motions

even though evidence subsequently indicated the claim would be futile).  Thus, the

court finds that AFI's claim that the nine subject entries liquidated by operation of law

prior to CBP's manual liquidation if Customs received notice before May 24, 2017 states

a sufficient claim for relief.  Proposed Am. Compl. ¶¶ 31, 33.[10]

---

[10] The court's conclusion is without prejudice to further briefing on the operative date of
notice if discovery reveals that Customs received non-public notice before the notice
was made public.

The Government next argues that, assuming AFI's allegations are true and CBP received non-public notice of the lifting of suspension of liquidation, "as a matter of law, notice that is never made available to the public cannot trigger the" six-month deemed liquidation period.  Def.'s Opp'n Am. Compl. at 14.  The Government relies on *Cemex*, 384 F.3d at 1320–21, 1325 n.5, and *FYH Bearing Units USA, Inc. v. United States*, 35 CIT 77, 81–82 & n.6, 753 F. Supp. 2d 1348, 1353 & n.6 (2011), but those cases do not support the Government's arguments here.  *See id.* at 14–16.

In *Cemex*, the court held that a non-public email from Commerce to Customs announcing the lifting of suspension of liquidation that CBP posted on a non-public bulletin board failed to trigger the six-month deemed liquidation period.  384 F.3d at 1321.[11]  The court did not address whether a non-public communication that is subsequently made public—or forms the basis of a public notification—could commence the deemed liquidation period.

In *FYH Bearing*, the court concluded that a Federal Register notice publishing Commerce's amended final results of an administrative review—and not an earlier non-public email from Commerce to Customs regarding forthcoming liquidation instructions—triggered the six-month deemed liquidation period because there was no indication that the email was ever made public.  35 CIT at 80, 82, 753 F. Supp. 2d at 1351–52, 1354.  As with *Cemex*, *FYH Bearing* does not foreclose the possibility that a

---

[11] The *Cemex* court also concluded that the email was not unambiguous because Commerce sent the email before the suspension of liquidation had actually lifted.  384 F.3d at 1321.

non-public communication that is subsequently made public, in whole or in part,

constitutes adequate notice pursuant to 19 U.S.C. § 1504(d).  Accordingly, the

Government fails to persuade the court that AFI's allegations fall short to the extent they

allege CBP's receipt of non-public notice prior to CBP's publication of Message No.

7150306.

The Government's final argument for futility implicates Customs' ability to

reliquidate entries that liquidated by operation of law pursuant to 19 U.S.C. § 1501.

Def.'s Opp'n Am. Compl. at 16–17.  According to the Government, if the subject entries

liquidated by operation of law, Customs properly reliquidated the nine subject entries on

November 24, 2017 and the single subject entry on December 1, 2017 because those

reliquidations occurred within 90 days from the date on which the entries deemed

liquidated.  *Id.*  In so doing, however, the Government relies on the post-TFEA version

of Section 1501, which differs from the version in effect when the entries were made.

*See id.* at 17; *supra* p. 8 and accompanying note 4.  This court previously held that the

amendments to Section 1501 are not retroactive, *United States v. Great Am. Ins. Co. of

New York*, 41 CIT ___, ___, 229 F. Supp. 3d 1306, 1323–26 (2017); *cf. Perfectus

Aluminum, Inc. v. United States*, 43 CIT ___, ___ 391 F. Supp. 3d 1341, 1358 & n.18

(2019) (applying the pre-TFEA version of Section 1501 to conclude that Customs is

time-barred from reliquidating entries that were made from 2011 through 2015), and the

Government does not address that authority, *see* Def.'s Opp'n Am. Compl. at 17.  Thus,

the Government has failed to persuade the court that AFI's claim is futile based on

Customs' authority to voluntarily reliquidate AFI's entries.[12]  Accordingly, AFI's motion for leave to file a first amended complaint will be granted.

### CONCLUSION AND ORDER

In accordance with the foregoing, it is hereby:

**ORDERED** that Plaintiff's motion for leave to file a first amended complaint (ECF No. 58) is granted; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (ECF No. 35) and Plaintiff's cross-motion for partial judgment on the pleadings or, alternatively, for partial summary judgment (ECF No. 43) are denied as moot.

The court will contact the parties to discuss further proceedings in this case.

/s/      Mark A. Barnett
Mark A. Barnett, Judge

Dated: August 17, 2020
         New York, New York

---

[12] The Government is not precluded from raising Customs' authority to reliquidate pursuant to 19 U.S.C. § 1501 as a defense to AFI's claims.  However, should the Government choose to do so, it must address this authority.